**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| AARON EDWARD STEVENSON | ) | 3:21-CV-00320 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RIVERSIDE MOTORCARS LLC | ) | |
| *Defendant*. | ) | NOVEMBER 1, 2021 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT (ECF NO. 11)**

Kari A. Dooley, United States District Judge

This action arises out of Plaintiff Aaron Stevenson's purchase and financing of a used vehicle from Defendant Riverside Motorcars LLC. Plaintiff brought this action alleging violations of the Truth in Lending Act (TILA), the Connecticut Retail Installment Sales Financing Act (RISFA), and the Connecticut Unfair Trade Practices Act (CUTPA). Pending before the Court is Plaintiff's Motion for Default Judgment. For the reasons set forth below, the Court grants Plaintiff's motion and directs that Judgment enter in favor of Plaintiff in accordance with the following.

**Facts[1]**

Defendant advertised on its website a 2008 Infiniti EX35 ("vehicle") for $7,150. On September 11, 2020, Plaintiff agreed to purchase the vehicle for that amount and to make a down payment of $1,000. Plaintiff also received a $500 allowance from Defendant for the trade-in of his Toyota Solara ("trade-in vehicle") and financed the balance with Defendant. Defendant provided a Purchase Order for the vehicle. However the Purchase Order lists the purchase price as $8,150,

---

[1] The facts derive from a combination of the allegations in the Complaint, which are deemed admitted, and the testimony offered at the hearing on Plaintiff's Motion for Default Judgment.

and indicates that Plaintiff paid $1,600 down. The Purchase Order further reflects a finance charge of $1,887.49, and that Plaintiff would make 130 installment payments of $86.89 to Defendant commencing September 18, 2020. The Purchase Order is the only document that Defendant provided to Plaintiff with respect to the financing of the transaction or terms of credit. The Purchase Order does not accurately reflect the agreed purchase price or the down payment, and it fails to account for the trade-in allowance. As a result, the Purchase Order miscalculates the sales tax, the amount financed and, ultimately, the total payments due. Moreover, it does not indicate the frequency of installments to be made or the consequences of a late payment.

On February 1, 2021, Plaintiff returned the vehicle to Defendant. The following day, on February 2, 2021, Plaintiff, through counsel, notified Defendant that he was rescinding the contract due to violations of RISFA. Plaintiff also demanded a return of all sums paid to Defendant, to include twenty installment payments. Defendant, still in possession of the vehicle, failed to return any sums paid by Plaintiff.

On March 11, 2021, Plaintiff brought this action alleging violations of TILA, RISFA, and CUTPA based on the fact that the Purchase Order fails to include the statutorily required terms of the retail installment agreement, an accurate recitation of the agreed purchase price and the like. Plaintiff also alleges a violation of CUTPA based on Defendant's sale of the vehicle for a price greater than advertised. Plaintiff avers that, as a result of Defendant's conduct, he suffered ascertainable losses and damages. Plaintiff seeks TILA statutory damages, punitive damages, a return of all amounts paid to Defendant, attorneys' fees, and an order granting rescission of the contract.

Although served on March 29, 2021, Defendant failed to appear, answer, or otherwise defend the action. Therefore, Plaintiff moved, pursuant to Rule 55(a), for entry of default against

Defendant, which motion the Court granted on June 15, 2021. That same day, on June 15, 2021, Plaintiff filed, pursuant to Rule 55(b), the instant Motion for Default Judgment. Plaintiff supplemented the motion on September 23, 2021. On September 24, 2021, the Court held an evidentiary hearing on the motion. At the hearing, the Court heard testimony from Plaintiff and admitted exhibits into the record.

**Standard of Review**

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001) (internal quotation marks omitted) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). In civil cases, however, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party[.]" *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). In making this determination and evaluating the allegations asserted against a defendant, the Court may "deem[ ] all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). Here, the Court also has the benefit of Plaintiff's testimony and a series of documents establishing both liability and damages.

In determining damages, "[t]he outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment d[oes] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992) (internal brackets and citation omitted).

As discussed below, Plaintiff has sufficiently alleged facts supporting his claims and has produced evidence of damages to the Court's satisfaction. Accordingly, Defendant's failure to appear, respond or otherwise defend the instant action renders a default judgment in favor of Plaintiff appropriate.

**Discussion**

**TILA**

TILA seeks to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a). Thus, "TILA provides for a private right of action for damages where a creditor fails to make disclosures required by the Act." *Sylvia v. Kensington Auto Serv., Inc.*, No. 3:20-CV-01622 (KAD), 2021 WL 2634502, at *2 (D. Conn. June 26, 2021) (internal quotation mark omitted).

Upon consideration of Plaintiff's allegations, which are deemed admitted, his testimony and the Purchase Order, it is manifest that the Purchase Order does not include many of the disclosures mandated by TILA. *See* 15 U.S.C. § 1638(a). For example, the Purchase Order does not include the period of payments scheduled for Plaintiff to repay his obligation. *See id*. § 1638(a)(6) (requiring disclosure of "due dates or period of payments scheduled to repay the total of payments"). Further, the Purchase Order omits any information regarding the consequences of a late payment. *See id*. § 1638(a)(10) (requiring disclosure of "[a]ny dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment"). Moreover, the Purchase Order also does not include any statement with respect to default, the right to accelerate the maturity of debt, or prepayment rebates or penalties. *See id*. § 1638(a)(12) (requiring "[a] statement that the consumer should refer to the appropriate contract document for any information

4

such document provides about nonpayment, default, the right to accelerate the maturity of debt, and prepayment rebates and penalties"). To the extent that the Purchase Order arguably includes the alleged missing disclosures, or sufficient information from which the missing disclosures might be gleaned, the TILA requirements are not "clearly and conspicuously in writing," as required. 12 C.F.R. § 226.17(a)(1). Thus, the Court finds that Plaintiff has established a TILA violation.

**RISFA**

"RISFA sets forth the conditions governing retail installment sales contracts under Connecticut law." *Sylvia*, 2021 WL 2634502, at *2. It provides that "[e]very retail installment contract shall be in writing, shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer." CONN. GEN. STAT. § 36a-771(a). It also "requires sellers to comply with the Connecticut Truth in Lending Act, which in turn incorporates the requirements of the federal TILA and Regulation Z." *Sylvia*, 2021 WL 2634502, at *2; *see* CONN. GEN. STAT. § 36a-771(b). Thus, insofar as Defendant violated TILA, it also violated RISFA. And given the vague and very limited content of the Purchase Order, the only document generated memorializing the sale and financing of the vehicle, it strains credulity to consider the document a "retail installment contract" at all. Indeed, Plaintiff's allegation that he was not provided with any retail installment contract is deemed admitted.

**CUTPA**

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). It also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." *Id.* §

42-110g(a). A CUTPA claim consists of three basic elements: (1) an ascertainable loss of money or property (2) that was caused by an unfair method of competition or an unfair or deceptive act (3) that occurred in the conduct of trade or commerce. *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 788–90 (2019). To determine when a practice is unfair, the Connecticut Supreme Court has adopted the so-called "cigarette rule" promulgated by the Federal Trade Commission. *Id*. at 790. Under this rule, courts must consider:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businesspersons[.]

*Id*. (alterations omitted; citation omitted; internal quotation marks omitted). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." *Id*. (citation omitted; footnote omitted; internal quotation marks omitted).

Here, Plaintiff argues that Defendant's TILA violation satisfies the public policy criterion for an "unfair" practice. Indeed, "[a] violation of TILA offends the public policy embodied in TILA, and several courts have thus held that a TILA violation constitutes a CUTPA violation." *Muñoz v. JLO Auto., Inc*., No. 3:19-CV-01793 (MPS), 2020 WL 6607789, at *3 (D. Conn. Nov. 12, 2020); *see also Hernandez v. Saybrook Buick GMC, Inc*., 505 F. Supp. 3d 93, 112 (D. Conn. 2020) (recognizing that, under Conn. Agency Reg. § 42-110b-28(b)(23), it is a *per se* CUTPA violation for a car dealership to fail to comply with a state or federal law concerning the sale of motor vehicles). As Plaintiff has established that he suffered an ascertainable loss and that the

6

TILA violation occurred in the conduct of trade or commerce, the Court finds that Plaintiff has established a CUTPA violation based upon the TILA violation.

Plaintiff also argues that Defendant violated CUTPA pursuant to Conn. Agency Reg. § 41-110b-28(b)(1). Under CUTPA implementation regulations, it is "an unfair or deceptive act or practice for a new car dealer or used car dealer to fail to sell or lease . . . a motor vehicle in accordance with any terms or conditions which the dealer has advertised, including, but not limited to, the advertised price." Conn. Agency Regs. 42-110b-28(b)(1). Here, Plaintiff alleges that Defendant failed to sell the vehicle for the advertised price of $7,150 and increased the purchase price to $8,150. Plaintiff therefore argues that Defendant violated Conn. Agency Regs. 42-110b-28(b)(1). Plaintiff testified however that the agreed upon purchase price was, in fact, $7,150, and that the Purchase Order inaccurately reflected a higher purchase price as a means of burying an additional finance charge in the contract. Having already determined that the TILA violation establishes a CUTPA violation, the Court does not take up the question of whether these unique facts implicate Conn. Agency Regs. 42-110b-28(b)(1) for purposes of establishing an additional CUTPA violation.

**Damages and Other Relief**

***TILA Statutory Damages***

Under TILA, "any creditor who fails to comply with any requirement . . . with respect to any person is liable to such person in an amount equal to the sum of (1) any actual damage sustained by such person as a result of the failure; (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000[.]" 15 U.S.C. § 1640(a). Here, Plaintiff asserts that he is entitled to the statutory maximum of $2,000 because the finance

charge, as reflected on the Purchase Order, was $1,887.49. Plaintiff argues that twice the amount of the finance charge well exceeds the maximum statutory damages. The Court agrees that Plaintiff is entitled to the maximum damages under TILA. Accordingly, the Court awards Plaintiff $2,000 in statutory damages.

### Rescission

"Rescission, simply stated, is the unmaking of a contract." *Metcalfe v. Talarski*, 213 Conn. 145, 153 (1989) (internal quotation marks and citation omitted). "It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract." *Id.* (internal quotation marks and citation omitted). "[R]escission of the contract [is] an implied remedy under RISFA." *See Barco Auto Leasing Corp. v. House*, 202 Conn. 106, 113 (1987). "[A]s a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible." *Id.* "In restoring the parties to their respective positions prior to the contract, courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller." *Id.*

Plaintiff is entitled to a rescission of the contract and the return of all payments made to Defendant, to include the $1,000 down payment, the $500 allowance for the trade-in vehicle, the twenty installment payments of $86.89, and $31.75 in excess sales tax,[2] as a remedy for

---

[2] Plaintiff argues that he improperly paid sales tax on the allowance for the trade-in vehicle. Specifically, Plaintiff alleges that Defendant failed to record on the Purchase Order the $500 trade-in allowance separate from the $1,000 down payment, and instead recorded inaccurately a down payment of $1,600. Plaintiff argues that, due to this inaccuracy on the Purchase Order, he improperly paid sales tax on $1,600 instead of $1,000, and seeks a return of $38.10 in excess sales tax. Plaintiff correctly notes that, as a result of Defendant's failure to account for the $500 trade-in allowance, he was subject to excess sales tax. *See* CONN. GEN. STAT. § 12-430(4) (sales tax not charged on amount allowed on trade-in vehicle). Plaintiff, however, miscalculates that excess amount. According to Plaintiff's allegations and testimony, the amount allowed on the trade-in vehicle was $500. Due to Defendant's failure to account for this trade-in allowance, Plaintiff was improperly charged sales tax at a rate of 6.35% on the $500 allowance, rather than on the additional $600 included inaccurately as a down payment. Therefore, the Court finds that Plaintiff incurred excess sales tax of $31.75.

Defendant's RISFA violation. Further, Defendant has been in possession of the vehicle since February 1, 2021, when Plaintiff returned it to Defendant. Despite Plaintiff thereafter serving notice on Defendant that he was rescinding the contract, Defendant has failed to return any sums to Plaintiff. Therefore, to restore the parties to their respective positions prior to the contract, the Court awards damages based upon the amount of all payments made by Plaintiff, i.e., $3,269.55. *See Hernandez*, 505 F. Supp. 3d at 110 (finding that plaintiff was entitled to rescission as a remedy for a RISFA violation after returning vehicle to defendant). The Court also finds the contract rescinded and that there is no further indebtedness to Defendant thereunder. *See Metcalfe*, 213 Conn. at 159 ("[T]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes[.]" (internal quotation marks and citation omitted)).

### Punitive Damages

Under CUTPA, "[t]he court may, in its discretion, award punitive damages[.]" CONN. GEN. STAT. § 42-110g(a). "In order to award punitive . . . damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]" *Ulbrich v. Groth*, 310 Conn. 375, 446 (2013) (internal quotation marks and citation omitted). "While the CUTPA statutes do not provide a method for determining punitive damages, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." *Perkins v. Colonial Cemeteries, Inc*., 53 Conn. App. 646, 649 (1999). "[T]he award should serve the broad remedial goals of eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." *Societa Bario E. Derivati v. Kaystone*

*Chem., Inc.*, No. 5:90-CV-599 (EBB), 1998 WL 182563, at *10 (D. Conn. Apr. 15, 1998) (internal quotation marks omitted).

Here, Plaintiff argues that he is entitled to punitive damages because Defendant's conduct was egregious and therefore warrants such an award to deter future misconduct. The Court agrees with Plaintiff that the circumstances warrant an award of punitive damages. It does not appear to the Court that the Defendant made even passing effort to comply with its statutory obligations. Indeed, the Purchase Order is not only silent on many of the statutorily required provisions, but affirmatively misrepresents several salient terms of the agreed upon transaction. In executing the Purchase Order and failing to generate any other document memorializing the sale or financing of the transaction, Defendant patently disregarded the requirements of TILA and RISFA, each designed to protect unsuspecting consumers like the Plaintiff. The evidence, therefore, "reveal[s] a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]" *Ulbrich*, 310 Conn. at 446 (internal quotation marks and citation omitted). Accordingly, the Court awards punitive damages of $5,000 under CUTPA.

### Attorneys' Fees

Plaintiff is entitled to attorneys' fees pursuant to TILA and CUTPA. *See* 15 U.S.C. § 1640(a)(3) (noting that the creditor is liable for "a reasonable attorney's fee as determined by the court"); CONN. GEN. STAT. § 42-110g(d) ("the court may award . . . reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery"). To determine reasonable attorneys' fees courts multiply "a reasonable hourly rate by the number of reasonably expended hours." *See Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). "It is plaintiffs' burden to establish with satisfactory evidence—in addition to the attorney's own affidavits—why their requested fee is

appropriate. . . . Also, [t]o determine whether a requested hourly rate is reasonable, courts may take judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Sylvia*, 2021 WL 2634502, at \*5 (internal quotation marks and citation omitted).

Here, Plaintiff seeks $8,474 in attorneys' fees. The attorneys' fees are based on hourly rates of $475 for Attorney Daniel S. Blinn; $350 for Attorney Brendan L. Mahoney; $150 for Paralegal Lori Minor; and $95 for Legal Assistant Dora Fernandez. The hourly rates that Plaintiff seeks for Attorney Blinn and Attorney Mahoney are higher than the hourly rates that Courts have recently found to be reasonable for their services. *See Sylvia*, 2021 WL 2634502, at \*5 (awarding attorneys' fees based on hourly rates of $400 for Attorney Blinn and $275 for Attorney Mahoney). In support of the requested increase to the hourly rate for Attorney Blinn, Plaintiff argues that Attorney Blinn's skill, experience and reputation justify the increase, and submits an affidavit of Attorney Joanne S. Faulkner which opines that an hourly rate of $475 for his services is reasonable. In support of the requested increase of the hourly rate for Attorney Mahoney, Plaintiff argues that Attorney Mahoney's experience and status as a senior associate justify the increase.

While the Court does not foreclose a possible future determination that the higher rates are appropriate and should be awarded, in this case, the Court is not of this view. On June 26, 2021, while the instant Motion for Default Judgment was pending, the Court in *Sylvia* found that hourly rates of $400 and $275 for Attorney Blinn and Attorney Mahoney, respectively, were reasonable. *Id*. This finding as to reasonable rates for their services was made after a substantial majority of the billable hours were performed in this matter. *See* ECF No. 16-1 (indicating that 19.5 or 67.01% of the 29.1 billable hours were logged prior to June 26, 2021). Given the significant temporal overlap between the work performed in this case and the work performed in *Sylvia*, and given the

Court's prior determination regarding reasonable rates for work performed during that time period, the Court declines to award attorneys' fees based on the increased hourly rates. Accordingly, the Court finds that hourly rates of $400 for Attorney Blinn, $275 for Attorney Mahoney, $150 for Paralegal Lori Minor, and $95 for Legal Assistant Dora Fernandez are reasonable. *See id.* (finding these same rates to be reasonable). The Court further finds based on these hourly rates and the number of reasonably expended hours that attorneys' fees of $6,969.50 is reasonable and is so awarded.

### Conclusion

The Court awards compensatory damages in the amount of $3,269.55; statutory damages under TILA in the amount of $2,000; punitive damages under CUTPA in the amount of $5,000; and attorneys' fees in the amount of $6,969.50 for a total award of $17,239.05.

Judgment shall enter against Defendant and in favor of Plaintiff in the amount of $17,239.05 and the contract for the purchase of the vehicle is hereby rescinded. The Clerk of the Court is directed to prepare the Judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of November 2021.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE